**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

MELISSA E.,

        **Plaintiff,**

  v.                        **Civil Action 3:25-cv-00262**
                                     **Magistrate Judge Kimberly A. Jolson**

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Melissa E., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI").  For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 9) and **AFFIRMS** the Commissioner's decision.

## I.      BACKGROUND

Plaintiff previously applied for Child Disability Insurance Benefits on April 12, 2021.  Her application proceeded to an administrative hearing, and Administrative Law Judge Stuart Adkins issued an unfavorable decision on July 20, 2022.  (R. at 52–68).  Plaintiff then filed her application for SSI on May 1, 2023, alleging that she was disabled beginning March 7, 2016, due to clinical depression, general anxiety, social anxiety, insomnia.  (R. at 191–206, 219).  After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on July 1, 2024.  (R. at 33–51).  The ALJ denied benefits in a written decision on August 14, 2024.  (R. at 14–32).  That became the final decision of the Commissioner when the Appeals Council denied review.  (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on July 31, 2025 (Doc. 1), and the Commissioner filed the administrative record on September 30, 2025.  (Doc. 7).  The matter has been briefed and is ripe for consideration.  (Docs. 9, 12, 13).

**A.      Relevant Statements to the Agency and Hearing Testimony and Relevant Medical Evidence**

The ALJ summarized Plaintiff's relevant statements to the agency and testimony from the administrative hearing.  (R. at 22–23).  As discussed in more detail below, the ALJ also summarized Plaintiff's medical records as to her mental health issues.  (R. at 23–24).

**B.      The ALJ's Decision**

The ALJ found that Plaintiff has not engaged in substantial gainful employment since May 1, 2023, the application date.  (R. at 20).  The ALJ determined that Plaintiff has the following severe impairments: depression, anxiety, borderline personality disorder, and obesity.  (*Id.*).  The ALJ, however, found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ found that:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] can perform tasks that are not at a production rate pace and without strict performance quotas. She can tolerate occasional superficial contact with coworkers and supervisors, defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions, such as persuading other people or rendering advice. She must avoid all interaction with the public. She can tolerate occasional changes to a routine work setting, defined as one to two changes per week.

(R. at 22).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely

2

consistent with the medical evidence and other evidence in the record." (R. at 25).

Plaintiff has no past relevant work. (R. at 27). Relying on the vocational expert's testimony, the ALJ concluded that considering her age, education, work experience, and the above RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as a kitchen helper, laundry worker or industrial cleaner. (R. at 27–28). He therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time since May 1, 2023. (*Id.*).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

3

III.    **DISCUSSION**

In her Statement of Errors, Plaintiff contends that ALJ Adkins erred by finding his own 2022 Denial of Benefits to be "binding," in contravention to established law.  (Doc. 9 at 5–13).  The Commissioner counters that the ALJ made his RFC determination based on a fresh look at the new evidence.  (Doc. 12 at 3–7).  The Court agrees with the Commissioner that the ALJ did not err.

A.    ***Drummond*, *Earley*, and Fresh Review**

In *Drummond v. Commissioner of Social Security*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."  126 F.3d 837, 842 (6th Cir. 1997).  In that case, a claimant's initial claim for SSI was denied when an ALJ found that she was capable of sedentary work.  *Id*. at 838.  When the claimant later re-filed her disability claim, a second ALJ found that she was capable of medium-level work—unlike the sedentary RFC finding of the first ALJ—and denied the re-filed claim.  *Id*. at 839.  After explaining that "*[r]es judicata* applies in an administrative law context following a trial type hearing," the Sixth Circuit held that the second ALJ was bound by the sedentary RFC determination of the first ALJ because there was no new or additional evidence of an improvement in the claimant's condition.  *Id*. at 841–842.  The Sixth Circuit reasoned that "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner."  *Id*.  The Social Security Administration subsequently issued an Acquiescence Ruling explaining how the ruling in *Drummond* would be applied to claims in the Sixth Circuit:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim . . . unless there is new and material evidence relating to such a finding or there has

4

been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

AR 98-4(6), *Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II and XVI of the Social Security Act*, 1998 WL 283902, at *3 (June 1, 1998).

The Sixth Circuit also subsequently clarified the scope of *Drummond* in *Earley v. Commissioner of Social Security* by reiterating that *res judicata* applies to administrative proceedings. 893 F.3d 929 (6th Cir. June 27, 2018). The *Earley* Court explained that when a claimant files a later application covering the same period as an earlier application, *res judicata* applies absent good cause to revisit the earlier determination. *Id*. at 933. But the *Earley* Court explained that *res judicata* does not apply when a claimant files a subsequent application seeking benefits for a different period. Instead, "[w]hen an individual seeks disability benefits or a distinct period of time, each application is entitled to review." *Id*. The *Earley* Court cautioned, however, that "fresh review is not blind review." *Id*. at 934. Although an ALJ evaluating a subsequent application is not bound to follow a previous determination, the ALJ may "nevertheless consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id*. Accordingly, "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id*. at 933.

Since then, this Court has said that *Earley* "clarified" the Court's decision. *Teasley v. Comm'r of Soc. Sec.*, No. 2:18-cv-1079, 2019 WL 2559514 at *5 (S.D. Ohio June 21, 2019). "The Sixth Circuit explained that 'the key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications'—do not prohibit the Social Security Administration 'from giving a fresh look to a new application containing new evidence or

satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in a prior proceeding.'" *Id.* (citing *Earley*, 893 F.3d at 933). Therefore, as this Court has noted, "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.*  In fact, in *Dugan v. Commissioner of Social Security*, an early post-*Earley* decision, the Sixth Circuit cited to *Drummond* and noted that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 742 F. App'x 897, 901–02 (6th Cir. 2018).  The Court explained that "[i]n such cases, '[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.'" *Id.*  The Court found that the ALJ's pre-*Earley* analysis satisfied the legal standard because she ultimately found new and material evidence of medical improvement which meant she was not bound by a prior ALJ's determination. *Id.*  Said simply, citation to *Drummond* was not in and of itself enough to warrant remand.  This Court, as well as other courts in the circuit, have come to the same conclusion.

For example, in *Mitchell v. Commissioner of Social Security*, the United States District Court for the Eastern District of Michigan explained that "the Court is less concerned as to whether the ALJ merely stated the wrong legal standard, and more concerned as to whether the ALJ applied the wrong legal standard." No. 20-13414, 2022 WL 265869, at *2 n.3 (E.D. Mich. Jan. 28, 2022). So, "while a post-*Earley* ALJ's recitation of the pre-*Earley* standard raises a yellow flag, it is nevertheless possible that such a post-*Earley* ALJ decision could functionally comply with *Earley* if the ALJ gave the evidence a fresh look." *Id.*; *see also Civitarese v. Comm'r of Soc. Sec.*, No. 1:19-cv-2015, 2020 WL 4366077, at *14 (N.D. Ohio July 30, 2020).

6

Thus, while citation to *Drummond* without *Earley* necessitates caution, the Court ultimately must determine whether the ALJ freshly reviewed the evidence.  As the Sixth Circuit stated, "the key question is whether the second ALJ treated review of the new application 'as if' they were 'bound by the prior decision.'"  *Gooden v. Comm'r of Soc. Sec.*, No. 23-3927, 2024 WL 2830817, at \*4 (6th Cir. June 4, 2024) (citing *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662, at\*4 (6th Cir. Mar. 20, 2024)).  "*Earley* requires remand only when the judge *actually applied* incorrect res judicata principles."  *Id.* (emphasis in original).

### B.  ALJ Adkins's Review

In discussing the jurisdiction and procedural history of Plaintiff's application, ALJ Adkins stated:

> Regarding the residual functional capacity assessment in the undersigned's previous decision, the Administration cannot make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act, unless new and material evidence or changed circumstances provide a basis for a different finding concerning a claimant's residual functional capacity, (Acquiescence Ruling 98-4(6); *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir.1997)). In this case, [Plaintiff] has not produced new and material evidence documenting a significant change in [Plaintiff]'s condition. Thus, the undersigned's previous residual functional capacity determination is binding.

(R. at 17–18).

Plaintiff is correct that the ALJ cited to the legal standard in *Drummond* and Acquiescence Ruling 98-4(6), rather than *Drummond* as clarified by *Earley*.  (*See generally* Doc. 9).  Instead of concluding his own prior findings were a legitimate, albeit nonbinding, consideration, the ALJ stated he cannot make a different finding unless new and material evidence or changed circumstances provide a basis for a different finding concerning Plaintiff's RFC.  (R. at 17–18).  And then the ALJ found the prior RFC binding because Plaintiff did not produce new and material evidence documenting a significant change in her condition.  (*Id.*).  Plaintiff contends this

determination placed an undue additional procedural burden on Plaintiff and is a reversible legal error. (Doc. 9 at 5–10). Plaintiff also asserts that the ALJ's conclusion that she did not produce new and material evidence was not supported by substantial evidence, and his reliance on the state agency reviewers was misplaced. (*Id.* at 10–13). The Court finds the ALJ's treatment of the record adequate.

As explained above, an ALJ's erroneous citation to *Drummond* without reference to *Earley* does not, on its own, warrant reversal. *See Christina S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-298, 2023 WL 4557045, at *8 (S.D. Ohio July 17, 2023). While citing the wrong legal standard may raise a "yellow flag," the ultimate question before the Court is "whether the [adjudicator] gave a fresh review to the evidence" in a claimant's case. *Mark D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-58, 2023 WL 312795, at *5 (S.D. Ohio Jan. 19, 2023) (citing *Mitchell*, 2022 WL 165869, at *2 n.3), *report and recommendation adopted*, No. 3:22-CV-58, 2023 WL 2479792 (S.D. Ohio Mar. 10, 2023). This is true even where an ALJ concludes that a prior mental RFC determination is binding because he finds the plaintiff has not produced new and material evidence to document a significant change in her condition. *See Carla K. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-290, 2024 WL 3593353, at *3, 5–9 (S.D. Ohio July 31, 2024), *report and recommendation adopted*, No. 3:23-CV-290, 2024 WL 4099926 (S.D. Ohio Sept. 6, 2024); *see also Braden G. v. Comm'r of Soc. Sec.*, No. 2:23-CV-2626, 2024 WL 3324876, at *9 (S.D. Ohio July 8, 2024) ("[T]he fact that a second ALJ adopts the same RFC findings as a prior ALJ, standing alone, does not violate *Earley* because it says nothing about how the ALJ reached that decision." (emphasis omitted)), *report and recommendation adopted sub nom. Braden G. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-2626, 2024 WL 4198177 (S.D. Ohio Sept. 16, 2024). Additionally, courts have found an ALJ's discussion of new medical records provided evidence that the ALJ freshly

reviewed a plaintiff's case.  *See, e.g.*, *Brandon M. v. Comm'r of Soc Sec.*, No. 3:22-CV-167, 2023 WL 6348406, at *3 (S.D. Ohio Sept. 29, 2023).  Adding severe impairments that were not included in a plaintiff's prior disability determination was also "a strong indicator that the current ALJ conducted a fresh look at the evidence." *Id.* (citing *Sadler v. Comm'r of Soc. Sec.*, No. 18-11689, 2019 WL 4892419, at *6 (E.D. Mich. Aug. 16, 2019)).

Here, although the ALJ failed to cite to *Earley* and stated the previous RFC determination was binding, these factors are present.  The ALJ's reasoning shows that he reviewed the new evidence to give Plaintiff's application the required "fresh review."  *Earley*, 893 F.3d at 933.  (*See also* R. at 37 (the ALJ's statement at Plaintiff's disability hearing that he is not bound by his previous determination)).

Up front, the ALJ found Plaintiff had different severe impairments in his 2024 opinion compared to his 2022 opinion.  In particular, in 2022 the ALJ found Plaintiff's severe impairments included anxiety, depression, social anxiety, insomnia, and obesity.  (R. at 58).  While the more recent opinion also found depression, anxiety, and obesity as severe impairments, the ALJ found a new severe impairment: borderline personality disorder.  (R. at 20).  And the ALJ did not find either social anxiety or insomnia in the 2024 opinion.  (*Id.*).  Additionally at step three of the 2022 opinion, the ALJ assessed only whether Plaintiff's mental impairment met or medically equaled the criteria of listing 12.04 and 12.06.  (R. at 58).  In 2024, the ALJ also looked to listing 12.08. (R. at 20).  These changes suggest the ALJ gave the evidence a fresh review.  *See, e.g.*, *Brandon M.*, 2023 WL 6348406, at *3 (finding the ALJ's addition of a severe impairment to be an indicator of *Earley's* "fresh look"); *Carla K.*, 2024 WL 3593353, at *6 (finding assessment of additional listings not considered in a prior application supportive of fresh review).

9

Importantly, the ALJ also extensively reviewed Plaintiff's 2024 hearing testimony and new medical records.  First, the ALJ noted her testimony that her depression is rated an 8/10 compared to a 2/10 when she was previously denied benefits.  (R. at 22 (citing R. at 39)).  He also considered her testimony that she has panic attacks when she leaves the house; has severe depression; has thoughts of killing herself; lacks energy to "do anything"; struggles to perform "even basic tasks"; spends most of her time sleeping; has no hobbies; and is anxious around people she does not know.  (R. at 22–23 (citing R. at 42–46)).  The ALJ also discussed Plaintiff's function report, where she attributed her mental difficulties to anxiety and depression; reported working took a toll on her mentally and physically; stated she cannot be around people or talk to them due to anxiety attacks; and provided that while she enjoys reading, she lacks the energy to do it or anything else that she enjoys.  (R. at 23 (citing R. at 227–235)).

The ALJ further considered Plaintiff's treatment notes related to her mental impairments. He found that her symptoms "waxed and waned" over time.  (*Id.* (citing R. at 285)).  On one occasion, her therapist noted her unkempt appearance, unwashed clothes, unwashed hair, and body odor.  (*Id.* (citing R. at 289)).  At the same appointment, she had racing thoughts, an anxious mood, and mild suicidal ideation.  (*Id.*).  Her therapist highlighted some of the same symptoms at other appointments.  (*Id.* (citing, *e.g.*, R. at 317, 319, 380, 383)).  But though the ALJ found Plaintiff reported passive suicidal ideation with no plan, she was also noted as having motivation to find a job, a desire to explore new coping skills and hobbies, excitement for gardening, eagerness to spend time in nature, and enthusiasm to read and color more.  (*Id.* (citing R. at 358)).  The ALJ continued that despite mood lability with depression, Plaintiff had fair insight into her problem and was reported to tolerate her medicine well.  (*Id.* (citing R. at 330, 348, 375)).  And though she subsequently experienced difficulties with medication side effects and depression after not being

selected for a job, she described her symptoms as "off and on" and "agreed that her fluctuating symptoms might be related to her difficulty finding a job." (*Id.* (citing R. at 380, 383)).

The ALJ acknowledged that Plaintiff experienced exacerbations of symptoms throughout the relevant period, but at the same time demonstrated a logical and oriented thought process. (R. at 24 (citing R. at 315)). She reported leaving the house and improvement in her ability to get out of bed and partake in self-care. (*Id.* (citing R. at 285, 315)). The ALJ highlighted that in April 2023, she demonstrated a stable mood, reported sleeping through the night and good appetite, and did not flag any suicidal or homicidal ideation. (*Id.* (citing R. at 391)). She made progress towards her goals related to interacting with others and reported her depression was controlled and her anxiety well-managed. (*Id.* (citing R. at 459)). She found therapy helpful, and in May 2023 her provider noted that she would benefit from gainful employment. (*Id.* (citing R. at 470)). The ALJ recognized that in July 2023, Plaintiff reported an increase in depression symptoms but still reported making progress in therapy and a desire to socialize with others. (*Id.* (citing R. at 431)). The ALJ also acknowledged that in March 2024, Plaintiff experienced an increase in depression and anxiety symptoms, and she canceled some appointments with her therapist. (*Id.* (citing R. at 517, 520)). But in June 2024, after medication changes, Plaintiff reported she was feeling better, had socialized with friends, and was considering joining a gaming club to meet more people. (*Id.* (citing R. at 538)).

Based on this objective medical evidence, the ALJ found Plaintiff's statements about the limiting effects of her symptoms inconsistent with the record. (R. at 25). He recognized that Plaintiff experienced symptom exacerbation, but also that treatment had generally been effective. (*Id.*). And despite testimony about extreme social anxiety, the record referenced her socialization and willingness to make friends and pursue new interests. (*Id.*). The ALJ concluded that "[t]he

residual functional capacity limitations supported in this decision adequately account for [Plaintiff's] ongoing mental health symptoms. Thus, [she] is capable of work within the parameters of the residual functional capacity in this decision." (*Id.*).

Not only did the ALJ consider Plaintiff's updated medical records, the state agency psychological reviewers did as well in 2023. (*See* R. at 70–71 (reviewing records from July, November, and December 2022, and February and May 2023), 79 (reviewing records from July and August 2023)). On initial review, Dr. Ken Lovko found the record did not reveal evidence that would support changing Plaintiff's mental restrictions the ALJ determined in 2022 RFC. (R. at 74). On reconsideration, Dr. Sona Adamo ultimately agreed with Dr. Lovko's initial determination after discussing the updated evidence. (R. at 80–81). *Cf. Eric M. v. Comm'r of Soc. Sec. Admin.*, No. 3:25-CV-00098, 2026 WL 872687 (S.D. Ohio Mar. 30, 2026) (finding the state agency reviewers permissibly adopted a prior RFC and found "no change in the claimant's condition" where the doctors reviewed and cited new evidence in the record). The ALJ found the state agency reviewers' findings persuasive. (R. at 25–26). While he noted that they adopted the prior RFC, the reason the ALJ found their opinions supported was because of their reference to the updated mental status examination findings and therapy notes. (R. at 26). The ALJ also found their opinions consistent with the overall record of Plaintiff experiencing symptom exacerbation at points but at other times experiencing improvement with treatment and symptom management with medication. (*Id.* (citing R. at 285, 289, 317, 331, 348, 391, 431, 470, 520, 538)).

The ALJ further considered a June 2024 impairment questionnaire completed by Plaintiff's treating provider, Emily Freimuth. (*Id.* (citing R. at 440–42 (finding Plaintiff was moderately limited in seven areas of functioning, was "none–mild[ly]" limited in all others, would be off task 15% of the workday, and would be absent from work three times per month))). The ALJ noted

12

her opined limitations but ultimately found her opinion only partially persuasive. (*Id.*). The ALJ found that her opinion was generally supported and consistent with the record of Plaintiff's complaints of decreased energy, emotional lability, social withdrawal, isolation, sleep issues, and generalized persistent anxiety. (*Id.* (citation omitted)). But he also found the checkbox-style form limited persuasiveness and the degree of limitation opined inconsistent with Plaintiff's generally unremarkable mental status findings. (*Id.* (citing R. at 440–42). The ALJ further found inconsistency in that Plaintiff reported actively looking for a job and one therapist connected Plaintiff's depression to her inability to find a job. (*Id.* (citing R. at 380)).

This discussion shows that the ALJ gave Plaintiff's application the fresh look that *Earley* requires. The ALJ found a new severe impairment, considered Plaintiff's new testimony, reviewed Plaintiff's updated medical records, and analyzed the 2023 and 2024 medical opinions. *Carla K.*, 2024 WL 3593353, at *6 (finding assessment of new evidence that did not exist at the time of the prior decision supportive of a fresh look). He explained the RFC determination was made in consideration of Plaintiff's ongoing symptoms. (R. at 25 ("The residual functional capacity limitations supported in this decision adequately account for [Plaintiff's] ongoing mental health symptoms.")). Other than in his discussion of the procedural history, the only time the ALJ mentioned the 2022 RFC determination was when he stated the state agency reviewers adopted the same limitations. (*Id.*); *cf. Bryant v. Comm'r of Soc. Sec.*, No. 1:24-CV-00926-BYP, 2025 WL 1295086, at *8 (N.D. Ohio May 5, 2025) (remanding where the ALJ consistently analyzed whether the evidence demonstrated changes compared to the prior ALJ decision), *report and recommendation adopted sub nom. Bryant v. Comm'r of Soc. Sec. Admin.*, No. 1:24-CV-926, 2025 WL 1474330 (N.D. Ohio May 21, 2025). He then explained why the state agency reviewers' opinions—which also took into account Plaintiff's updated medical records—were supported by

13

and consistent with the new record evidence. (R. at 26). In other words, the ALJ did not actually apply incorrect *res judicata* principles or impose an additional procedural hurdle. *See Gooden*, 2024 WL 2830817, at *4.

Finally, the ALJ's discussion also represents substantial evidence that the record did not establish limitations greater than those he found in 2022. Again, the ALJ considered Plaintiff's new testimony, medical records, and medical opinions in detail. Though he acknowledged that Plaintiff experienced exacerbated symptoms during the relevant period, he also discussed the many examples of Plaintiff benefitting from treatment, engaging in social activities, and having unremarkable mental examinations. (R. at 23–25). Still, Plaintiff provides other record citations that she says supports a finding that her condition significantly changed and she required a more limited RFC. (*See* Doc. 9 at 10–11). Fundamaentally, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

All of this is not to say that the ALJ accurately recited the law in procedural history description. He did not, despite the years since *Earley*. But the Sixth Circuit is clear that each decision must be evaluated on its own merit. *Cf. Dennis D.*, 2024 WL 1193662, at *4 ("[T]he

14

question for our consideration is whether, despite this misstatement of the legal standard, ALJ Beatty treated his review of the new application as if he were bound by the prior decision, thereby depriving Dennis D. of a 'fresh look.'").  In this case, the fairest read of the ALJ' s opinion is that he reviewed the evidence independently and crafted a record-based RFC.  Said another way, the ALJ followed *Earley's* precepts by providing Plaintiff with a fresh look.  All told, substantial evidence supports his decision.  As a result, Plaintiff's assignment of error is not well taken.

## IV.    CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 9) and **AFFIRMS** the Commissioner's decision.


IT IS SO ORDERED.


Date: April 8, 2026                              *s/ Kimberly A. Jolson*
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE

15